IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTINE PITTS, ET AL.,          *

          Plaintiffs                *

                                    *        Civil No.  PJM 14-1682

v.                                  *

                                    *

LEVY FAMILY                         *

ASSOCIATES, LLC, ET AL.             *

                                    *

          Defendants                *

FILED _____ ENTERED
LODGED _____ RECEIVED

APR 2 7 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

## MEMORANDUM OPINION

Christine Pitts, Brenda Fortune, Nancy Rivas, Sylvia Walker, and Rosa Cruz ("Plaintiffs") have sued Kash King, LLC, Levy Family Associates, LLC and Mitchell Levy ("Kash King"), alleging violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. Plaintiffs and Kash King have now reached a settlement, and ask for the Court to approve the settlement and dismiss with prejudice all claims in the Complaint. For the reasons that follow, the Court **GRANTS** the Joint Motion for Settlement, ECF No. 19, and **DISMISSES WITH PREJUDICE** the remaining counts of the Complaint, ECF No. 1, as to all Defendants.

### I.

### Factual and Procedural Background

Kash King LLC and Levy Family Associates LLC are businesses owned and operated by Mitchell Levy that provide check cashing services in Maryland. The Plaintiffs are all former

employees of Kash King who worked as either cashiers/tellers or lottery clerks at one or more of the Defendants' check cashing stores in Maryland.

Plaintiffs allege that Kash King failed to pay each plaintiff their final paycheck following their separations from employment. They also claim that Kash King failed to pay wages and overtime for hours worked off the clock at the close of the business day. They also claim that Kash King made improper deductions from their paychecks. Christine Pitts also alleges that Kash King misclassified her as an exempt employee, and failed to pay her overtime as a result.

Plaintiffs filed the Complaint in May 2014. ECF No. 1. After an exchange of informal discovery, Kash King recognized that certain claims related to final paychecks and unpaid overtime hours were meritorious.[1] Accordingly, on August 27, 2014, Kash King made payments to each of the plaintiffs for unpaid wages or overtime, and for liquidated damages in an amount equal to the unpaid wages or overtime. Kash King asserts that these underpayments were not the result of deliberate actions, but rather administrative or ministerial error.

Kash King answered the Complaint on September 5, 2014. ECF No. 10. The parties filed various motions to extend deadlines to facilitate the parties' settlement negotiations. On January 1, 2015, the parties submitted a Joint Motion for Settlement, ECF No. 19, and filed a supplement to that Motion on February 9, 2015. ECF No. 21. At the direction of the Court, ECF No. 22, the parties filed a further supplement to the Motion on April 15, 2015. ECF No. 23.

## II.

## Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that

---

[1] Kash King admitted that wages for .11 hours were not included in Ms. Araujo's final paycheck, and that wages for 29.64 hours were not included in Ms. Rivas's final paycheck. Kash King asserts that as to the other three plaintiffs, the final paychecks included pay for more hours than the plaintiffs actually worked during the relevant pay period: 1.18 hours for Ms. Pitts, 8.3 hours for Ms. Fortune, and .07 hours for Ms. Walker. *See* ECF No. 21, at 2.

may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman*, 2013 WL 2949047, at *3 (citing *Hoffman v. First Student, Inc.*, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* The Court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

3

### III.

### Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17.

The parties stipulate that, after exchange of informal discovery, all other issues raised in the Complaint either lacked merit or had undisputed merit. In particular, Kash King paid the plaintiffs a total of $6,860.14, reflecting both amounts owed and an equal amount in liquidated damages, for claims involving unpaid wages on final paychecks and unpaid straight time and overtime hours. Accordingly, the parties submit that only two factual and legal disputes remain as to Kash King's liability under the FLSA.

First, the parties dispute whether Ms. Pitts qualified as an exempt employee between May 2011 and October 2012 under either the administrative or executive exemptions to the FLSA. The parties dispute Ms. Pitts's duties and responsibilities at Kash King; for example, whether she was in charge of the store on a day-to-day basis, whether she was responsible for dealing with customer and staff concerns, or whether she regularly supervised two or more individuals.

Second, the parties dispute whether Kash King's practice of making deductions from plaintiffs' paychecks for "check cashing errors" violates the Maryland Wage Payment and Collection Law. While the parties are unclear about precisely what constitutes "check cashing errors," it appears from the Complaint that Kash King would charge Plaintiffs when, at the end of their shift, there was a cash shortage or dishonored check. It is undisputed that Kash King's employee handbook clearly indicated that such deductions would be made from paychecks. But

4

the parties dispute whether Plaintiffs' signing of the employee handbook acknowledgements constitutes an acceptable form of "express authorization" under the MWPCL.

In light of the foregoing, the Court concludes that a *bona fide* dispute exists as to Kash King's liability under the FLSA based on Ms. Pitts's status as an exempt employee. The Court finds this dispute genuine, whose resolution would depend on both further factual development as well as rulings of law.

The parties appear to argue that the dispute regarding Kash King's practice of making deductions from plaintiffs' paychecks is only a dispute about Kash King's liability under the MWPCL. Indeed, Plaintiffs appear to plead their improper withholding claims only as violations of the MWPCL. *Compare* Compl. ¶¶ 101-02; 106-07 *with* Compl. ¶¶ 82-95. The Court is not aware of any authority instructing the court to consider disputes over non-FLSA claims in deciding whether an FLSA dispute is *bona-fide*. That said, the Court has no reason to believe that this MWPCL dispute is anything but genuine.

## IV.

### Fairness and Reasonableness

If a *bona fide* dispute is found to exist, courts must then evaluate the fairness and reasonableness of the settlement based on the following factors:

> "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery."

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Having reviewed the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* dispute.

5

The case is settling at an early stage; indeed, the parties do not represent that any formal discovery has taken place. In *Saman*, which settled at a similarly early stage, plaintiff's counsel averred that he had the opportunity through mediation to review wage/hour records of sufficient quantity and quality to determine the potential range of recovery in the case. *See Saman*, 2013 WL 2949047, at *3. On this basis, Judge Chasanow of this Court concluded that the parties had had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations. *See id.* (citing *Lomascolo*, 2009 WL 3094955, at *11). Counsel in the present case represent that they engaged in informal discovery, and that informal discovery was sufficient for the parties to agree to dismiss certain claims as lacking merit, and to agree that certain claims had undisputed merit. For purposes of the one remaining FLSA dispute, any formal discovery would focus on Ms. Pitts's duties and responsibilities at Kash King. Formal discovery as to remaining MWPCL dispute would focus on whether or not the payroll deductions were authorized. The Court is satisfied the parties have had sufficient opportunity to evaluate their claims and defenses as to these disputed legal and factual issues and to engage in informed arms-length settlement negotiations.

Similarly, the Court finds no fraud or collusion in the proposed settlement, given the experience of Plaintiffs' counsel, and the endorsement of settlement by counsel for both parties, and the quality of the filings submitted to date.

Finally, as to the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery, the Court is satisfied that the settlement of each Plaintiff's claim is fair and reasonable under the circumstances. The proposed settlement is as follows:

6

Plaintiffs' claims for unpaid wages on final paychecks and for overtime were settled and paid on August 27, 2014, for the actual amounts owed, plus an equal amount in liquidated

| | August 27, 2014 Payment | | | | |
|---|---|---|---|---|---|
| Plaintiff | Unpaid Wages on Final Paycheck | Liquidated Damages resulting from Unpaid Wages on Final Paycheck | Unpaid Overtime | Liquidated Damages resulting from Unpaid Overtime | Total Amount Paid to Plaintiffs on Aug. 27, 2014 |
| Christine Pitts | $ - | $ - | $ 602.06 | $ 602.06 | $ 1,204.12 |
| Brenda Fortune | $ - | $ - | $ 942.98 | $ 942.98 | $ 1,885.96 |
| Nancy Rivas | $ 281.58 | $ 281.58 | $ 26.42 | $ 26.42 | $ 616.00 |
| Sylvia Walker | $ - | $ - | $ 199.35 | $ 199.35 | $ 398.70 |
| Rosa Araujo | $ 1.65 | $ 1.65 | $ 1,376.03 | $ 1,376.03 | $ 2,755.36 |
| Total | $ 283.23 | $ 283.23 | $ 3,146.84 | $ 3,146.84 | $ 6,860.14 |

| | Proposed Settlement | | | | |
|---|---|---|---|---|---|
| Plaintiff | Unpaid Overtime | Liquidated Damages resulting from Unpaid Overtime | Paycheck Deductions | Liquidated Damages resulting from Paycheck Deductions | Total Settlement |
| Christine Pitts | $ 5,543.68 | $ - | $ 6,585.02 | $ 3,292.51 | $ 15,421.21 |
| Brenda Fortune | $ - | $ - | $ 1,719.00 | $ 859.50 | $ 2,578.50 |
| Nancy Rivas | $ - | $ - | $ 453.71 | $ 226.86 | $ 680.57 |
| Sylvia Walker | $ - | $ - | $ 1,776.00 | $ 888.00 | $ 2,664.00 |
| Rosa Araujo | $ - | $ - | $ 621.45 | $ 310.73 | $ 932.18 |
| Total | $ 5,543.68 | $ - | $ 11,155.18 | $ 5,577.59 | $ 22,276.45 |

| Plaintiff | Total Recovery |
|---|---|
| Christine Pitts | $ 16,625.33 |
| Brenda Fortune | $ 4,464.46 |
| Nancy Rivas | $ 1,296.57 |
| Sylvia Walker | $ 3,062.70 |
| Rosa Araujo | $ 3,687.54 |
| Total | $ 29,136.59 |

Given the potential that such FLSA claims could be asserted as to these deductions, as well as the parties' request for "court approval of the entire settlement," ECF No. 19-2, at 1 n.1, the Court will consider the fairness and reasonableness of the settlement as to the improper deduction claims.

The settlement reflects the amount that each Plaintiff alleged was improperly deducted, plus half of that amount in liquidated damages. In light of Kash King's arguments that Plaintiffs are barred as a matter of law from recovering any deductions at all from Kash King, the Court finds these proposed settlement amounts reasonable under the circumstances.

In sum, the settlement agreement would recover the actual amounts that each Plaintiff alleges she is owed, plus at least some proportion of liquidated damages that would be owed were the Plaintiffs to win on the issue at trial. The Court finds this settlement reasonable in relation to the potential recovery in the case.

**V.**

Attorneys' Fees

The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Lane*, 2011 WL 3880427, at *3 (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1243 (M.D. Fla. 2010)). In making that assessment, courts typically use the principles of the traditional lodestar method as a guide. *Id.* (citing cases).

Traditionally, in calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a reasonable hourly rate multiplied by hours reasonably expended. *Duprey v. Scotts Co. LLC*, 2014 WL 2174751, at *6 (D. Md. May 23, 2014) (citing *Lopez v.*

*XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). In Appendix B to its Local Rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). Plaintiffs should also provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task. *See Saman*, 2013 WL 2949047, at *7; Local Rule 109.2; Appendix B to the Local Rules.

The Parties submit that the rates charged by Plaintiffs' counsel reflect Appendix B rates. ECF No. 6, at 6. However, from the Court's review of Plaintiffs' counsel's billing records, it appears that Plaintiffs' counsel in fact bills according to the 2014-2015 Laffey Matrix rates often used by the U.S. District Court for the District of Columbia, rather than Appendix B of the Local Rules of this Court. *See* ECF 23-1. Use of the Laffey Matrix results in fees above the high end of the Appendix B rates: for example, Plaintiffs' counsel charged $255/hr for an attorney with 1-3 years of legal experience, while the Appendix B rate for an attorney with 1-5 years of legal experience is $150-$225. Similarly, Plaintiff's counsel charged $520/hr for attorneys with over 20 years of experience, while the Appendix B rate for an attorney with over 20 years of experience is $300-$475.

It is unclear exactly how many hours Plaintiffs' counsel spent litigating this case. Plaintiffs' counsel originally filed redacted billing statements indicating 169.60 hours billed. ECF No. 21-1, at 25. At the direction of the Court, Plaintiffs' counsel supplemented their billing

10

records with the total number of hours billed by lawyers or other professionals at each billing rate. This document indicates that Plaintiffs' counsel billed 145.8 hours, and listed an additional 39.20 hours in non-billable hours, for a total of 185 hours. ECF No. 23-1. As a result, the Court is uncertain whether the original 169.60 hours figure included non-billable hours. The Court will therefore assume that the parties are representing that Plaintiffs' counsel has expended 145.8 hours litigating the case.

The parties submit that Plaintiffs' counsel has incurred $39,970 in attorneys' fees, and $572.83 in reimbursable expenses as of January 13, 2015. ECF No. 21.[2] In the settlement, the parties have agreed to attorneys' fees and costs to $27,723.55, or approximately 69% of Plaintiffs' counsel's claim.

The Court, in its discretion, is satisfied that the settlement amount of $27,723.55 for 145.8 hours expended by Plaintiffs' counsel are reasonable, especially in light of the number of plaintiffs involved in the case, and the presence of multiple types of claims (underpayments, overtime, and improper deductions) requiring investigation and research. Plaintiffs' counsel's tasks included client intake, preparing a complaint, reviewing documents provided by Kash King, negotiating the settlement, and preparing the Joint Settlement Motion. The settlement of $27,723.55 in attorneys' fees and costs represents approximately 69% of the $39,970 in fees and costs incurred by Plaintiffs, a reduction that reasonably reflects the risks associated with taking the case to trial. In light of the settlement reduction, the Court is satisfied with Plaintiffs'

---

[2] In Plaintiffs' counsel's latest submission to the Court, the attorneys' fees incurred is listed as $44,495.50 for 145.80 billable hours. ECF No. 23-1. It seems likely that this increased amount of fees relative to the $39,970 in fees contained Plaintiffs' counsel's initial submission reflects additional work performed after January 13, 2015.

counsel's use of Laffey Matrix rates, rather than Appendix B rates.[3] Accordingly, the Court finds the attorney fee award of $27,723.55 in the proposed settlement to be reasonable.

## VI.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Settlement and **DISMISSES WITH PREJUDICE** all remaining counts of the Complaint as to all Defendants. A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 27, 2015

---

[3] Based on Plaintiffs' counsel's latest submission to the Court, ECF No. 23-1, the difference in this case between the total billable hours under Laffey Matrix rates for 145.80 hours billed ($44,495.50) and the high end of Appendix B rates for 145.80 hours billed ($40,920) is $3575. The Court finds that the reduction in fees reached in settlement reasonably accounts for this discrepancy between Laffey Matrix and Appendix B rates.